IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | NO. CV-11-3093-LRS |
| Plaintiff, | **ORDER RE SUMMARY JUDGMENT MOTIONS** |
| and | |
| ELODIA SANCHEZ, et al. | |
| Plaintiffs-Intervenors, | |
| v. | |
| EVANS FRUIT CO., INC. | |
| Defendant, | |
| and | |
| JUAN MARIN and ANGELITA MARIN, a marital community, | |
| Defendants-Intervenors. | |

**BEFORE THE COURT** are the Motion For Summary Judgment filed by Defendant Evans Fruit Co., Inc. (ECF No. 187), and the Motion For Summary Judgment filed by Defendants-Intervenors Juan and Angelita Marin (ECF No. 215). These motions are heard without oral argument.

//

**ORDER RE SUMMARY JUDGMENT MOTIONS-    1**

**BACKGROUND**

Pursuant to Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, Plaintiff Equal Employment Opportunity Commission (EEOC) asserts retaliation claims against Evans Fruit on behalf of ten individuals referred to as the "Charging Parties:" Gregorio Aguila, Aurelia Garcia, Wendy Granados, Ambrocio Marin, Cirilo Marin, Angela Mendoza, Francisco Ramos, Elodia Sanchez, Gerardo Silva and Norma Valdez. The same individuals, as Plaintiffs-Intervenors, assert retaliation claims against Juan and Angelita Marin pursuant to Title VII, as well as the Washington Law Against Discrimination (WLAD). All of the Charging Parties/Plaintiffs-Intervenors are former employees of Defendant Evans Fruit.

Section 704(a) of Title VII provides that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The WLAD states: "It is an unfair practice for any employer . . . to discriminate against any person because he or she has opposed any practices forbidden by [WLAD], or because he or she has filed a charge, testified, or assisted in any proceeding under [WLAD]." RCW § 49.60.210(1). RCW 49.60.220 makes it "an unfair practice for any person to aid, abet, encourage, or incite the commission of any unfair practice, or to attempt to obstruct or prevent any other person from complying with the provisions of this chapter or any order issued thereunder."

///

ORDER RE SUMMARY
JUDGMENT MOTIONS-            2

The Ninth Circuit recognizes that the framework used to analyze Title VII retaliation claims applies equally to the WLAD. *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003). To establish a *prima facie* case of retaliation under this framework, a plaintiff must demonstrate: (1) that he engaged in a protected activity; (2) that he was thereafter subjected to adverse action; and (3) that a causal link exists between the protected activity and the adverse action. *Id*.

Title VII protects former employees from retaliation by their former employer. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S.Ct. 843 (1997). Section 704(a) is not limited to adverse employment actions and may reach retaliatory conduct by employers towards former employees outside the employment context. *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S.Ct. 2405, 2411-12 (2006). "[A]n employer can effectively retaliate against [a former] employee by taking actions not directly related to his employment or by causing him harm outside the workplace." *Id*. at 63.[1]

To satisfy the adverse action prong, "a plaintiff must show that a reasonable [former] employee would have found the challenged action materially adverse, which in this context means it might have dissuaded a reasonable [person] from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68(quotations omitted). This is an objective standard and an individual's claim must be analyzed in the full context of the facts of the case. *Id*. at 69. A causal link can be shown by direct evidence or inferred from circumstantial evidence such as

---

[1] See *Haley v. Pierce County Washington*, 2013 WL 544017 (2013) at *13 and n. 38, a WLAD retaliation case, in which the Washington Court of Appeals found "persuasive" this analysis by the U.S. Supreme Court.

**ORDER RE SUMMARY JUDGMENT MOTIONS-    3**

the temporal proximity between the protected activity and the adverse action, and whether the employer knew that the former employee engaged in protected activities. *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987).

**SUMMARY JUDGMENT STANDARD**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975). Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985). Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to proven that no genuine issue of material fact exists. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against

**ORDER RE SUMMARY
JUDGMENT MOTIONS-            4**

a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

At the summary judgment phase in an employment discrimination case, the plaintiffs' prima facie burden is minimal and "does not even rise to the level of a preponderance of evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994). Summary judgment in favor of an employer in a discrimination case is often inappropriate because evidence commonly "contain[s] reasonable but competing inferences of both discrimination and nondiscrimination." *Kuyper v. State*, 79 Wn.App. 732, 739, 904 P.2d 793 (1995). A trial court, however, can only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of America*, 285 F.3d 764, 773 (9th Cir. 2002).

**DISCUSSION**

At the outset, the court notes that the reasoning contained in its October 26, 2010 "Order Granting Motion For Preliminary Injunction" (ECF No. 180 in CV-10-3033-LRS) has limited bearing on whether summary judgment should be granted on the retaliation claims pled by Plaintiffs.[2] In its preliminary injunction order, the court concluded there were "serious questions" going to the merits of the sexual harassment claims pled in CV-10-3033-LRS. No retaliation claims had been pled at that time and so the court did not consider whether there were "serious questions" going to the merits of any retaliation claims. While it is true this court concluded

---

[2] This order was later amended (ECF No. 215 in CV-10-3033-LRS), but not in any substantive way.

**ORDER RE SUMMARY JUDGMENT MOTIONS-**     **5**

there was a "likelihood of irreparable harm" based on what transpired at the February 10, 2010 meeting at the Sunnyside Public Library, this conclusion was not based on consideration of the analytical framework for evaluating retaliation claims. Moreover, the conclusion was based on hearing testimony from individuals other than those who participated in the February 10, 2010 meeting and who have now pled the retaliation claims pending before the court. (See ECF No. 180 in CV-10-3033-LRS at pp. 13-14).

At the preliminary injunction hearing, this court heard testimony from Domingo Cuenca Lugo and Alvaro Bernardino Rojas. Their testimony gave rise to a reasonable inference that they had been directed by Juan Marin to go the library and gather information about who was attending the meeting. (ECF No. 180 in CV-10-3033-LRS at pp. 10 and 15). At the time of the library meeting, Marin was employed as the foreman of Evans Fruit's Sunnyside Ranch, had been so employed since approximately 1981, and would remain so employed until July 23, 2010. Three of the attendees at the library meeting, Wendy Granados, Norma Valdez and Angela Mendoza, had previously filed charges with the EEOC between 2006 and 2008 alleging sexual harassment by Marin. The library meeting was convened by the EEOC for the purpose of investigating and discussing allegations of that nature in the Evans Fruit workplace.

The testimony of Cuenca and Rojas, assuming its admissibility at this summary judgment phase of the captioned litigation, may well continue to support a reasonable inference that Marin directed them to go the library and report back

///

///

///

**ORDER RE SUMMARY JUDGMENT MOTIONS-         6**

to him about who participated in the library meeting.[3]  Even then, however, the existence of such an inference does not necessarily mean a claimant present at the library meeting has established a prima facie case of retaliation.  At the preliminary injunction hearing, the court was concerned with the likelihood of irreparable harm. It was not concerned with the likelihood of success on any retaliation claims.

**FRANCISCO RAMOS**

Although Mr. Ramos attended the February 10, 2010 library meeting, the record establishes he did not do so as a "potential witness or claimant."  He last worked at Evans Fruit approximately 20 years ago and while employed there he did not witness any alleged sexual harassment.  He did no more than accompany his wife, Angela Mendoza, to the meeting.  Mr. Ramos' attendance at the meeting did not constitute "participation" in protected activity.  He does not fall within the "zone of interests" protected by Title VII or the WLAD.  His situation is clearly factually distinguishable from that involved in *Thompson v. N. America Stainless, LP*, _____ U.S. _____, 131 S.Ct. 863 (2011) (after plaintiff's fiancee filed a sex discrimination charge against the defendant, their joint employer, plaintiff was fired).  Mr. Ramos' interests are "unrelated to the statutory prohibitions" of Title

---

[3] A district court has discretion to consider hearsay for the purposes of deciding whether to issue a preliminary injunction. *The Republic of the Phillipines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988).  Because of the urgency of obtaining a preliminary injunction, the trial court may give weight to inadmissible evidence when it serves the purpose of preventing irreparable harm.  *Flynt Distrib. Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

**ORDER RE SUMMARY JUDGMENT MOTIONS-            7**

VII and the WLAD. *Id*. at 870,

Even assuming Mr. Ramos "participated" in a protected activity, he did not suffer a materially adverse action. He did not see anyone at the library who frightened or intimidated him. He did not notice Cuenca and Rojas at the library and did not know who they were. He testified he was informed by Gregorio Aguila during the meeting that "some people who worked for that company [Evans Fruit] were there." He was later informed by Aguila and/or his counsel that Juan Marin had allegedly threatened everyone who attended the meeting. What Aguila and/or counsel relayed to Mr. Ramos about purported post-meeting threats constitutes inadmissible hearsay. These are out-of-court statements offered to prove the truth of the matter asserted: that Marin threatened all of the meeting participants. Plaintiffs have not identified any exception to the hearsay rule which would permit consideration of these statements on summary judgment.[4] While it is true that Plaintiffs are not obliged to provide direct evidence of retaliation, they are nonetheless obliged to provide admissible evidence on summary judgment.

Unlike sexual harassment claims, there is no subjective component to retaliation claims. Because of the subjective component of a sexual harassment claim (claimant perceived the working environment to be abusive or hostile), out of court statements relayed to a sexual harassment claimant regarding similar acts of harassment in the workplace may be admissible for the purpose of showing the effect on the listener (the claimant). *Hawkins v. Anheuser-Busch*, 517 F.3d 321,

---

[4] Hearsay exceptions under Fed. R. Evid. 803 and/or 804 as opposed to statements which are not hearsay, such as admissions of a party opponent under Fed. R. Evid. 801(d)(2), discussed *infra*.

**ORDER RE SUMMARY
JUDGMENT MOTIONS-            8**

336-37 (6th Cir. 2008). Such statements are not hearsay because they are not offered for the truth of the matter asserted. Whether a retaliation claimant has been subjected to a materially adverse action is evaluated by a purely objective standard: a claimant must show that a reasonable person would have found the challenged action materially adverse, which means it might have dissuaded a reasonable person from making or supporting a charge of discrimination. The subjective effect of a statement on a particular claimant is irrelevant. The Title VII anti-retaliation provision's "standard for judging harm must be objective," so as to "avoi[d] the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Burlington Northern*, 548 U.S. at 68-69.

Without admissible evidence that Mr. Ramos was the subject of any threat, there is no genuine issue of material fact that he was subjected to a materially adverse action. A reasonable person would not have found the mere presence of "some people" from Evans Fruit in a public library in Sunnyside to be materially adverse. It is undisputed that the meeting took place in a public meeting area within the library. Likewise, a reasonable person would not have found materially adverse the fact that at sometime after the meeting, someone parked outside of his house for a few minutes one evening. There is no admissible evidence to connect this occurrence with Juan Marin and the meeting at the library.

**AURELIA GARCIA**

While at the library, Ms. Garcia did not see Cuenca and Rojas. There is no evidence that at that time she knew who they were and who they worked for. She did not learn of alleged unspecified threats by Marin against meeting participants

**ORDER RE SUMMARY
JUDGMENT MOTIONS-            9**

until a month later when she was told of the same by her counsel. This is inadmissible hearsay for the reasons already discussed. Like Francisco Ramos, Ms. Garcia has not presented evidence creating a genuine issue of material fact that she was subjected to a materially adverse action which can be causally linked to Juan Marin and the meeting at the library.

**WENDY GRANADOS**

Ms. Granados testified she saw two men in the library who seemed to be listening very intently to what was being said at the meeting and, as a result, she became uncomfortable and left. There is no evidence, however, that she knew at the time who these men were or about their association with Evans Fruit and Juan Marin. She learned later through her counsel that unspecified threats had been made against meeting participants. Once again, this is inadmissible hearsay and her retaliation claim fails as a matter of law for the same reason that the claims of Francisco Ramos and Aurelia Garcia fail. Without admissible evidence of threats that can be connected to Marin and the library meeting, all that is left is the mere presence of two men in a public library who seemed to be listening to what was going on at the meeting. A reasonable person would not consider this materially adverse. Furthermore, there is no admissible evidence to connect what allegedly happened to Ms. Granados sometime after the library meeting (allegedly being run

///
///
///
///

**ORDER RE SUMMARY
JUDGMENT MOTIONS-          10**

off the road by someone between April and July 2010) with Juan Marin and the library meeting.[5]

**NORMA VALDEZ**

Ms. Valdez testified she noticed two men in the library who she believed to be Evans Fruit employees. According to Ms. Valdez, the two men were looking at the meeting participants and were "only there for a few minutes." As with the other claimants, Ms. Valdez allegedly later heard of unspecified threats against meeting participants. In her case, however, no source for the threats (i.e., Mr. Aguila or counsel for Ms. Valdez) is identified. Whether the source is identified or not, this is inadmissible hearsay which cannot be considered in determining whether Ms. Valdez was subjected to a materially adverse action. Without admissible evidence, a reasonable person would not consider the mere presence of two individuals in the public library to be a materially adverse action. Furthermore, the post-meeting acts of intimidation alleged by Ms. Valdez cannot be linked to Juan Marin and the library meeting.

**GERARDO SILVA**

Mr. Silva noticed Cuenca and Rojas in the library. He apparently knew who they were. He did not see them taking any pictures and it was not until a week after the meeting that he learned from Ambrocio Marin that Gregorio Aguila had

---

[5] What "Hilario" said to Ms. Granados' husband in 2011 ("nobody will beat the company" and lawsuit participants will be punished) is inadmissible hearsay and moreover, has no apparent connection to Juan Marin.

**ORDER RE SUMMARY JUDGMENT MOTIONS-    11**

allegedly seen Cuenca and Rojas taking pictures with a cell phone. This is inadmissible hearsay, as is the assertion that Silva later "learned that Marin threatened everyone who attended the meeting." Without admissible evidence of specific threats, the mere presence of Cuenca and Rojas in a public library is not something a reasonable person would consider to be a materially adverse action. The alleged pre-2009 incidents involving Silva, some of which are also based on inadmissible hearsay (ECF No. 214 at p. 37), do not alter this conclusion.[6] Even considering these alleged background incidents, a reasonable person would not have considered the mere presence of Cuenca and Rojas in a public library to have anything to do with Juan Marin and the subject of the meeting. Furthermore, without admissible evidence regarding alleged threats by Marin, there is nothing to link alleged post-meeting acts of intimidation to Marin and the meeting in the library.

**CIRILO MARIN**

Cirilo Marin did not see Cuenca and Rojas at the library meeting. He later learned from Ambrocio Marin about alleged threats to meeting participants, including specifically to himself. His awareness of these threats is based on inadmissible hearsay which cannot be used to support his retaliation claim. Without admissible evidence, alleged incidents of intimidation/retaliation which occurred

---

[6] Plaintiffs acknowledge that all alleged pre-August 2009 incidents regarding the claimants, essentially all alleged incidents prior to the library meeting, are not actionable retaliation, but are offered only to provide "context" to what occurred at the library meeting and thereafter.

**ORDER RE SUMMARY JUDGMENT MOTIONS-**     **12**

three or more years prior to the 2010 library meeting, when Cirilo Marin was still employed at Evans Fruit, cannot remotely be connected to the library meeting. Nor is there anything which causally links alleged post-meeting acts of intimidation (threat from unidentified caller) to the meeting and to Juan Marin. A reasonable person would not have found materially adverse the presence of Cuenca and Rojas at the library meeting, particularly so when he did not learn of their presence until after the meeting.

**ANGELA MENDOZA**

Like Cirilo Marin, Ms. Mendoza did not see Cuenca and Rojas at the library meeting. She only learned later through her husband, Francisco Ramos, about the presence of these individuals, that they were associated with Evans Fruit, and that they were allegedly taking pictures. As discussed above, Mr. Ramos too did not see Cuenca and Rojas in the library and only learned later from others about their presence, that they were associated with Evans Fruit, and that they had allegedly been taking pictures. Mr. Mendoza's awareness of the presence of Cuenca and Rojas in the library is based on double hearsay.

Ms. Mendoza only learned later through others that alleged threats had been made against meeting participants. Her awareness of these threats is likewise based on inadmissible hearsay which cannot be used to support her retaliation claim. Without admissible evidence, alleged incidents of intimidation/retaliation which occurred four or more years prior to the 2010 library meeting, when Ms. Mendoza was employed at Evans Fruit, cannot remotely be connected to the meeting. Nor is there anything which causally links alleged post-meeting acts of intimidation (suspicious car parked in front of house) to the meeting and to Juan Marin. A

**ORDER RE SUMMARY
JUDGMENT MOTIONS-             13**

reasonable person would not have found materially adverse the presence of Cuenca and Rojas at the library meeting, particularly so when she did not learn of their presence until after the meeting.

**ELODIA SANCHEZ**

Ms. Sanchez was at the library meeting with her partner, Gregorio Aguila. She saw Cuenca and Rojas but it appears she did not independently know who they were or about their association with Evans Fruit. Mr. Aguila told her who they were. It is unclear whether she and Mr. Aguila left the meeting upon seeing the two men.

Subsequent to the meeting, she heard through Mr. Aguila that alleged threats had been made against meeting participants. All of her knowledge about alleged post-meeting threats is based on inadmissible hearsay. Consistent therewith, it is apparent from her deposition testimony that her claim is based solely on alleged pre-meeting and post-meeting threats made against Mr. Aguila and not against herself. Accordingly, as to Ms. Sanchez, there is nothing to link those alleged threats to the presence of the two men in the library and therefore, a reasonable person would not have found their presence to be materially adverse to her engagement in protected activity. Ms. Sanchez testified that subsequent to the library meeting, she received a call while she was meeting with her attorneys and an unidentified woman asked to speak to Mr. Aguila. Ms. Sanchez testified she overheard the woman tell Mr. Aguila he had two weeks to leave the area. This threat was directed to Mr. Aguila and as to Ms. Sanchez, it is not causally linked to Juan Marin and the library meeting.

**ORDER RE SUMMARY
JUDGMENT MOTIONS-          14**

## AMBROCIO MARIN

Mr. Marin attended the library meeting and claims to have seen Cuenca and Rojas. He apparently knew who they were and about their association with Evans Fruit. He did not see them taking photographs. On February 21, 2010, 11 days after the library meeting, Mr. Marin listened in as Gregorio Aguila called a man on Mr. Aguila's cell phone whose voice Mr. Marin later identified as that of Alberto Sanchez, a crew leader employed by Evans Fruit at that time who worked under the direction of Juan Marin. According to Mr. Marin, he heard the voice say "not to worry that they knew what they were going to do with Ambrocio and Cirilo." There was no specification of who "they" were.

Even assuming this to be a threat that could conceivably be linked to Juan Marin, and that it was indeed made by Mr. Sanchez, it is inadmissible hearsay and cannot be considered in determining whether a reasonable person would have considered the presence of Cuenca and Rojas in the library to be materially adverse. Fed. R. Evid. 801(d)(2) provides that a statement is not hearsay if it is offered against an opposing party and "(C) was made by a person whom the party authorized to make a statement on the subject; (D) was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or (E) was made by the party's coconspirator during and in furtherance of the conspiracy." Such a statement must be considered "but does not by itself establish the declarant's authority under (C), the existence of the relationship under (D); or the existence of the conspiracy or participation in it under (E)." The statement allegedly made by Mr. Sanchez over the phone does not establish that he was authorized by Juan Marin to make such a statement, and does not establish that it was made by Mr. Sanchez as an agent of Juan Marin within the scope of any agency

**ORDER RE SUMMARY
JUDGMENT MOTIONS-            15**

relationship which existed at that time between them.  Accordingly, the statement is not admissible against either Juan Marin or Evans Fruit as opposing parties.  The mere fact that Mr. Sanchez was a crew leader for Evans Fruit and Juan Marin was his foreman at the time the statement was allegedly made (a fact Mr. Sanchez testified to in conjunction with the preliminary injunction hearing in CV-10-3033-LRS, ECF No. 172 at p. 466), does not establish it was made pursuant to an agency relationship that existed between them.

Without admissible evidence of any post-meeting threat, what is left is the mere presence of Cuenca and Rojas in the library which a reasonable person would not consider materially adverse.  Alleged acts of intimidation/retaliation occurring three or four or more years prior to the library meeting, many of which are based on nothing more than hearsay, cannot be connected to the library meeting and therefore do not provide any "context" regarding the meeting and alleged post-meeting acts of intimidation/retaliation.

**GREGORIO AGUILA**

Mr. Aguila saw Cuenca and Rojas in the library and knew who they were and that they were associated with Evans Fruit, although he only knew them by their nicknames ("Mingo" and "Grandulon").  He claims to have seen them taking pictures with a cell phone, although no pictures were ever retrieved from the cell phone in question.  Mr. Aguila was the only one of the library meeting participants to purportedly see the men taking pictures with a cell phone.

The allegations made by Mr. Aguila regarding pre-library meeting interactions with Juan Marin are not remotely related to any "protected activity" on the part of Mr. Aguila concerning an EEOC investigation into charges of sexual

**ORDER RE SUMMARY
JUDGMENT MOTIONS-            16**

harassment. Indeed, there is no evidence that prior to the library meeting, Mr. Aguila was aware of any allegation by his partner, Elodia Sanchez, that she had been sexually harassed by Juan Marin. The evidence indicates he was not aware of these allegations until long after the library meeting when he and Ms. Sanchez moved to California.

Mr. Aguila says that after the library meeting, he received a call from Mr. Sanchez who stated he knew Mr. Aguila had been at the library meeting. Mr. Aguila says he then subsequently met with Sanchez in person who told him Juan Marin would give him (Mr. Aguila) more work or money in exchange for information about the meeting. All of the statements Mr. Aguila attributes to Mr. Sanchez are inadmissible hearsay and, for the reasons set forth above, do not constitute admissions by a party-opponent under Fed. R. Evid. 801(d)(2) that can be used against either Juan Marin or Evans Fruit. The same goes for alleged post-meeting statements made to Mr. Aguila by an unidentified woman in a red truck and who later allegedly telephoned him and told him he needed to leave town.

Mr. Aguila says that after the library meeting and his encounters with the unidentified woman in the red truck, Juan Marin "sent for me at the ranch and told me I was his friend, that I should never betray him, that I should never do anything against him, that I should never knife him in the back. And laughing, he held himself and said you know what I'm capable of; I can kill you." Because the statements made by Mr. Sanchez are inadmissible, this alleged statement by Marin, which is admissible as a statement by an opposing party, stands in isolation and is not causally linked to Mr. Aguila's participation in the library meeting. The same goes for the alleged telephone call Mr. Aguila received from Marin after Mr. Aguila had moved to California. In that call, Marin purportedly told Mr. Aguila that "I

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-         17**

know that you're in San Diego, California, take care of yourself. Hopefully God will help you." It is just as likely that alleged overt and subtle threats made by Marin directly to Mr. Aguila were linked to Marin's alleged interactions with Mr. Aguila well before the library meeting and which, as noted above, had nothing to do with Title VII "protected activity."

Accordingly, as with all of the other claimants, what is left is the mere presence of Cuenca and Rojas in a public library, perhaps taking pictures with a cell phone. A reasonable person in Mr. Aguila's position would not have considered that a materially adverse action in response to his participation in the library meeting (the relevant Title "protected activity"). At most, a reasonable person in Mr. Aguila's position may have considered it a materially adverse action in response to his pre-meeting interactions with Marin which had nothing to do with Title VII "protected activity" (i.e., alleged offer by Marin to kill a "Mequetrefe" at a time when Mr. Aguila did not know who "Mequetrefe" was; alleged offer by Marin to buy Aguila's child; alleged offer by Marin to spend time with Aguila's partner, Ms. Sanchez; being assaulted by "El Tigre"), but rather with what may amount to criminal activity.

**CONCLUSION**

Each of the claimants became aware of alleged threats by Juan Marin against library meeting participants by way of inadmissible hearsay which cannot be considered in assessing the viability of their retaliation claims. Accordingly, what remains is the mere presence of two men in a small town public library while claimants were gathered in a public space of that library. The two men resided in the area. Most of the claimants were not aware of the presence of the men and, if

**ORDER RE SUMMARY
JUDGMENT MOTIONS-            18**

aware of their presence, did not know who they were or about their association with Evans Fruit. And even as to the few who knew who the men were and their association with Evans Fruit, a reasonable person would not have considered their presence in the library to be materially adverse. Without admissible evidence of threats, there is simply nothing to connect alleged pre-meeting and post-meeting acts of intimidation/retaliation with the library meeting.

The Motion For Summary Judgment filed by Defendant Evans Fruit Co., Inc. (ECF No. 187), and the Motion For Summary Judgment filed by Defendants-Intervenors Juan and Angelita Marin (ECF No. 215) are **GRANTED**. Defendant Evans Fruit Co. and Defendants-Intervenors are awarded judgment on all Title VII and WLAD retaliation claims asserted against them.[7]

**IT IS SO ORDERED**. The District Executive is directed to enter Judgment accordingly and forward copies of the Judgment and this order to counsel of record.

**DATED** this ___19th___ day of April, 2013.

*s/Lonny R. Suko*

LONNY R. SUKO
United States District Judge

---

[7] Plaintiffs-Intervenors concede Title VII retaliation claims cannot be maintained against Defendants-Intervenors.

**ORDER RE SUMMARY JUDGMENT MOTIONS-**     **19**