1

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7        FOR THE EASTERN DISTRICT OF WASHINGTON

8  EQUAL EMPLOYMENT
   OPPORTUNITY COMMISSION          )   NO.  CV-11-3093-LRS
9                                  )
              Plaintiff,           )   **ORDER RE**
10                                 )   **MOTION FOR**
              and                  )   **RECONSIDERATION,**
11                                 )   ***INTER ALIA***
                                   )
12 GREGORIO AGUILA, *et al.*       )
                                   )
13     Plaintiffs-Intervenors,     )
                                   )
14 v.                              )
                                   )
15 EVANS FRUIT CO., INC.           )
                                   )
16             Defendant,          )
                                   )
17 and                             )
                                   )
18 JUAN MARIN and ANGELITA         )
   MARIN, a marital community,     )
19                                 )
       Defendants-Intervenors.     )
20 _____)

21        **BEFORE THE COURT** is Plaintiffs' Joint Motion For Reconsideration Of

22 Order Re Summary Judgment Motions (ECF No. 279).  This motion is heard

23 without oral argument.  Plaintiffs ask the court to reconsider its April 19, 2013

24 order (ECF No. 256) which awarded summary judgment to Defendants (Defendant

25 and Defendants-Intervenors) on the Title VII and WLAD retaliation claims asserted

26 against them by Plaintiffs (EEOC and Plaintiffs-Intervenors).

27

28 **ORDER RE MOTION FOR**
   **RECONSIDERATION, *INTER ALIA*- 1**

1  **I. RECONSIDERATION STANDARD**

2      A motion for reconsideration can only be granted when a district court: (1)

3  is presented with newly discovered evidence; or (2) committed clear error or the

4  initial decision was manifestly unjust; or (3) there has been an intervening change

5  in controlling law. *Dixon v. Wallowa County*, 336 F.3d 1013, 1022 (9th Cir. 2003).

6

7  **II. SIGNIFICANCE OF PRELIMINARY INJUNCTION**

8      Plaintiffs contend the court's summary judgment ruling is inconsistent with

9  the preliminary injunction it entered in October 2010 in CV-10-3033-LRS (the

10  sexual harassment case).  The court disagrees.

11      The retaliation case did not exist when this court issued the preliminary

12  injunction.  No retaliation claims were pending at that time and therefore, the court

13  did not engage in the analysis for determining whether any claimant stated a *prima*

14  *facie* case for retaliation (engaged in protected activity; thereafter subjected to

15  action which a reasonable person would have considered adverse; and causal link

16  between the protected activity and the adverse action).  The court did not use this

17  *prima facie* test to determine whether there was a likelihood of claimants

18  succeeding on their retaliation claims because the injunction was issued in a case

19  where the pertinent question was the likelihood of success on the sexual

20  harassment claims asserted.  The court instead found there were "serious

21  questions" as to the validity of the sexual harassment claims and there was a fair

22  chance the sexual harassment claimants would succeed on the merits of their

23  claims, reasoning as follows:

24          Little to no evidence was presented at the hearing
           regarding the underlying sexual
25          harassment/discrimination claims.  Nevertheless, the
           court concludes Juan Marin was aware EEOC sexual
26          harassment/discrimination charges had been filed against
           him beginning in 2006.  The fact Angela Mendoza, the
27          person who filed the charge in 2006, was present at the

28  **ORDER RE MOTION FOR**
   **RECONSIDERATION, *INTER ALIA*- 2**

February 10, 2010 meeting, along with at least one other charging party (Granados), reasonably suggests Cuenca and Rojas had been directed by Marin to go to the library in an effort to intimidate those who had already filed such charges and those who were considering filing such charges. Such action leads the court to conclude the Plaintiffs (EEOC and Elodia Sanchez) have at least a fair chance of succeeding on the merits of these claims and therefore, they are "fair ground for litigation" and for "more deliberative investigation."

(ECF No. 180 at p. 15).

During the preliminary injunction proceedings in CV-10-3033-LRS, the court did not consider the specific question of whether a reasonable person in the position of any meeting attendee would have considered materially adverse the presence of Cuenca and Rojas in the library. In turn, the court did not consider the important evidentiary issues which accompany that question and pertain to establishing the necessary causal link between protected activity and adverse action. These evidentiary issues were the focus of the court's summary judgment ruling on the retaliation claims and are again the focus during these reconsideration proceedings. Six of the ten future retaliation claimants testified at the preliminary injunction hearing in the sexual harassment case: Gregorio Aguila, Elodia Sanchez, Ambrocio Marin, Gerardo Silva, Cirilo Marin and Angela Mendoza. Hearsay testimony from these individuals at that time was admissible for the purpose of determining whether to issue a preliminary injunction, *The Republic of the Phillipines v. Marcos*, 862 F.2d 1355, 1363 (9th Cir. 1988), but it was not their testimony which the court deemed critical in deciding to issue a preliminary injunction in the sexual harassment case.

At the preliminary injunction proceedings in the sexual harassment case, the question before the court was the likelihood that Juan Marin was monitoring those who alleged he had engaged in sexual harassment/discrimination of female employees and therefore, whether there was potential for intimidation of sexual

**ORDER RE MOTION FOR RECONSIDERATION, *INTER ALIA*- 3**

harassment claimants and witnesses.  (ECF No. 180 at pp. 13-14).[1]  The court concluded the evidence established this likelihood, in particular because of the testimony of Cuenca and Rojas (the two men Marin allegedly sent to the library to monitor the Feb. 10, 2010 meeting), as well as of other individuals who did not attend the library meeting (Simon Ramirez, Miguel Aguila Camacho and Eliseo Aguila).[2]  Not before the court, because there were no retaliation claims pending at the time, was the question of whether any of the meeting attendees (the future retaliation claimants in CV-11-3093-LRS) suffered an adverse action because of engagement in protected activity.  If that question had been before the court, the court would have considered hearsay testimony from the meeting attendees regarding their knowledge of post-meeting threats because the court is entitled to consider such testimony in deciding a motion for a preliminary injunction.

The inference this court drew at the conclusion of the preliminary injunction proceedings, that Marin directed Cuenca and Rojas to go to the library, does not necessarily mean that a reasonable person would have found the presence of Cuenca and Rojas in the library to be materially adverse in the absence of admissible evidence linking the alleged post-meeting threat to Marin.  This court did not "change its mind" regarding the merits of the retaliation claims because no retaliation claims had been pled and were before it at the time it issued its preliminary injunction in the sexual harassment case.  And in any event, a

///

---

[1] Five of the ten attendees at the meeting were current or future sexual harassment claimants- Garcia, Granados, Sanchez, Valdez and Mendoza.

[2] Whether or not some of the testimony of these individuals constituted inadmissible hearsay was inconsequential because of the nature of the preliminary injunction proceedings.

**ORDER RE MOTION FOR RECONSIDERATION, *INTER ALIA*- 4**

1  preliminary injunction does not constitute a decision on the merits of any type of

2  claim.

3

## III. CLAIMANTS OTHER THAN GREGORIO AGUILA

5        Hearsay is any out-of-court statement, whether oral or written, offered in

6  evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(a), (c). In the

7  absence of a procedural rule or statute, hearsay is inadmissible unless it is defined

8  as non-hearsay under Fed. R. Evid. 801 or falls within a hearsay exception under

9  Fed. R. Evid. 803, 804, or 807. When a statement is hearsay within hearsay, or

10  double hearsay, each statement must qualify under some exemption or exception

11  to the hearsay rule. Fed. R. Evid. 805; *United States v. Arteaga*, 117 F.3d 388, 396

12  n. 12 (9th Cir. 1997).

13        The alleged threat at issue, and upon which all of the claimants rely,

14  originated with Gregorio Aguila. This threat was conveyed to Aguila by Alberto

15  Sanchez. Aguila relayed it to others, including his counsel (Ms. Rodriguez), and

16  to some of the other library meeting attendees.[3] Even assuming the statement that

17  Sanchez made to Aguila qualifies under some exemption to the hearsay rule (i.e.,

18  it is a "verbal act" or it is a statement of a co-conspirator), or an exception to the

19  hearsay rule (declarant's state of mind under FRE 803(3)), there also needs to be

20  an exemption or exception covering Aguila's out-of-court statements relaying

21  Sanchez's statement to others. It cannot merely be assumed that the exemption or

22

23        [3] Plaintiffs acknowledge there are two levels of potential hearsay involved,

24  referring to the "first hearsay issue" as Sanchez's "threatening statements to

25  Gregorio Aguila," and the "second hearsay issue" as "the other claimants'

26  statements about the threats they learned of from Mr. Aguila or counsel." (See

27  Plaintiffs' Reply Br., ECF No. 290 at pp. 5-6).

28  **ORDER RE MOTION FOR**
**RECONSIDERATION, *INTER ALIA*- 5**

exception which may apply to the statement that Sanchez made to Aguila carries over to  subsequent statements made by Aguila to others and then to what those others pass on to others.  Just because the statement may constitute a "verbal act" as between Sanchez and Aguila does not also mean it constitutes a "verbal act" as between Aguila and whomever else he told about it (i.e. his counsel), and does not continue to constitute a "verbal act" whenever whomever else (i.e., his counsel) told about it to another (i.e., another  claimant).  Thus, Sanchez's out-of-court statement may be admissible as a "verbal act" as between Sanchez and Aguila, and as such, Aguila, in support of his own retaliation claim, can testify to Sanchez making it.  The rest of the claimants, however, in support of their own retaliation claims, cannot testify about Aguila's or someone else's out-of-court statement to them about Sanchez's out-of-court statement (alleged threat).

In a Washington defamation case, plaintiff testified that "A" stated that "B" made an allegedly defamatory statement.  The Washington Supreme Court held that "B's" statement was admissible as a "declaration in issue," but that the plaintiff's testimony was nevertheless objectionable as hearsay because it repeated the out of court statements of "A."  5B Wash. Prac. Evidence Law and Practice §801.10 (5th ed.), citing *Dunlap v. Wayne*, 105 Wn.2d 529, 716 P.2d 842 (1986).  Here, what the other claimants propose to do is testify that Aguila or their counsel or someone else told them that Sanchez made the allegedly threatening statement.  Sanchez's statement may be admissible as a "declaration in issue" or as a verbal act, but testimony from the claimants about what Aguila or counsel or someone else told them is objectionable as hearsay because it repeats the out-of-court statement of Aguila or counsel or someone else as to what Sanchez purportedly told Aguila.

In accord is the holding in *U.S. Information Systems, Inc. v. International Brotherhood Of Electrical Workers Local Union Number 3*, 2006 WL 2136249 (S.D.N.Y. 2006) at *12 (threats were hearsay because they were verbal acts and "if

**ORDER RE MOTION FOR RECONSIDERATION, *INTER ALIA*- 6**

1    Mr. Pinney had received the threats himself he could have recounted them, but he

2    was not the recipient"). Here, if Sanchez's alleged threats constitute verbal acts as

3    to Aguila (discussed *infra*), Aguila can recount them without a hearsay issue in

4    support of his retaliation claim, but that does not mean all of the other claimants

5    can recount what Aguila or counsel or someone else told them without there being

6    a hearsay issue. This is because they were not "recipients" of the alleged threat.

7    The only "recipient" was Aguila.

8         Aguila's or counsel's or whoever else's out-of-court statements to the other

9    claimants (repeating Sanchez's out-of-court statement/ "threat") are offered for the

10   truth of the matter asserted: that all of the meeting participants were threatened by

11   Sanchez and/or Marin. Admission into evidence of these out-of-court statements

12   cannot be justified on the asserted basis that the statements are offered to show the

13   effect on the listener, rather than the truth of the matter asserted. This is because,

14   as the court discussed in its summary judgment order (ECF No. 256 at pp. 8-9), the

15   subjective feelings of a retaliation claimant are irrelevant:

16              Unlike sexual harassment claims, there is no subjective
               component to retaliation claims. Because of the
17              subjective component of a sexual harassment claim
               (claimant perceived the working environment to be
18              abusive or hostile), out of court statements relayed to a
               sexual harassment claimant regarding similar acts of
19              harassment in the workplace may be admissible for the
               purpose of showing the effect on the listener (the
20              claimant). Hawkins v. Anheuser-Busch, 517 F.3d 321,
               336-37 (6th Cir. 2008). Such statements are not hearsay
21              because they are not offered for the truth of the matter
               asserted. Whether a retaliation claimant has been
22              subjected to a materially adverse action is evaluated by
               a purely objective standard: a claimant must show that
23              a reasonable person would have found the challenged
               action materially adverse, which means it might have
24              dissuaded a reasonable person from making or
               supporting a charge of discrimination. The subjective
25              effect of a statement on a particular claimant is
               irrelevant. The Title VII anti-retaliation provision's
26              "standard for judging harm must be objective," so as to
               "avoi[d] the uncertainties and unfair discrepancies that
27              can plague a judicial effort to determine a plaintiff's

28   **ORDER RE MOTION FOR**
     **RECONSIDERATION, *INTER ALIA*- 7**

1   unusual subjective feelings." *Burlington Northern*, 548
    U.S. at 68-69.
2
3       Notwithstanding the Supreme Court's clear statement that subjective feelings

4   are irrelevant, Plaintiffs nevertheless assert that "the subjective understanding and

5   impact of the retaliatory acts by the subjects of those acts is a relevant inquiry."

6       There is an additional problem with counsel having relayed the alleged

7   threat to claimants in that it is unclear exactly what  counsel was told by Aguila

8   and, in turn, what counsel told the other claimants.  As Defendants-Intervenors

9   point out (and which is not disputed by Plaintiffs), "counsel asserted the attorney-

10  client privilege to all questions about what Mr. Aguila conveyed to his attorneys

11  . . . and/or about what the attorneys conveyed to the other plaintiffs . . .," and, "[a]s

12  a result, there will be no evidence whatsoever to prove that the other plaintiffs

13  [other than Aguila] ever 'experienced' and/or "knew about" the threats supposedly

14  made against them."  (ECF No. 288 at pp. 11-12).  This begs the question of how

15  defense counsel could be expected to effectively cross-examine any of these

16  claimants when it is unclear how they heard of the alleged threat from Sanchez and

17  exactly what they heard about the alleged threat.  This is not merely a matter of

18  "weight" to be given to a claimant's testimony, but rather the admissibility of that

19  testimony.

20      Plaintiffs lump Ambrocio Marin into the same category as all of the other

21  claimants in asserting he heard about the alleged threat from Aguila.  As discussed

22  in the court's summary judgment order, however, Ambrocio Marin's situation is

23  somewhat unique:

24          Mr. Marin attended the library meeting and claims to
            have seen Cuenca and Rojas.  He apparently knew who
25          they were and about their association with Evans Fruit.
            He did not see them taking photographs.  On February
26          21, 2010, 11 days after the library meeting, Mr. Marin
            listened in as Gregorio Aguila called a man on Mr.
27          Aguila's cell phone whose voice Mr. Marin later
            identified as that of Alberto Sanchez, a crew leader
28

**ORDER RE MOTION FOR
RECONSIDERATION, *INTER ALIA*- 8**

1

2    employed by Evans Fruit at that time who worked under
     the direction of Juan Marin.  According to Mr. Marin, he
3    heard the voice say "not to worry that they knew what
     they were going to do with Ambrocio and Cirilo."  There
     was no specification of who "they" were.

4    (ECF No. 256 at p. 15).

5        In their motion for  reconsideration, Plaintiffs do not single out Ambrocio

6    Marin for any unique analysis, notwithstanding his listening in on a telephone

7    conversation Aguila purportedly had with Alberto Sanchez. [4]  Presumably, this is

8    because the significance of  the aforementioned telephone conversation wholly

9    depends on what Ambrocio Marin  was told by Aguila about alleged threats being

10   made against library meeting participants and against himself (Ambrocio Marin)

11   specifically.  (ECF No. 212-2, A. Marin Dep. at p. 135, lines 5-22).  As discussed

12   _____

13       [4] In the court's summary judgment order, this was treated as a first level

14   hearsay issue (what Sanchez purportedly said during the telephone

15   conversation), instead of second level hearsay (what Aguila told Ambrocio

16   Marin), and the court found it did not qualify as non-hearsay under Fed. R.

17   Evid. 801(d)(2).  (ECF No. 256  at pp. 15-16).  The Plaintiffs do not engage in

18   that  analysis with regard to what Ambrocio Marin allegedly overheard during

19   the telephone conversation, presumably because it was not clear the caller was

20   Sanchez, that what he said amounted to a threat, and that Juan Marin was

21   somehow involved.  At the September 2010 preliminary injunction hearing in

22   CV-10-3033-LRS, Ambrocio Marin testified  he never heard Alberto Sanchez

23   threaten anyone (ECF No. 171 at p. 300), and that he never heard a direct threat

24   from Juan Marin (ECF No. 171 at p. 302).  Accordingly, with regard to

25   Ambrocio Marin, the issue involves second level hearsay and indeed, the

26   Plaintiffs treat it as such.

27

28   **ORDER RE MOTION FOR**
     **RECONSIDERATION,** *INTER ALIA*- **9**

1    herein, when Ambrocio Marin repeats what Aguila told him, that is hearsay and is

2    inadmissible unless there is some exemption or exception apart from an exemption

3    or exception which might allow Aguila to testify about what was said to him by

4    Sanchez.

5        Besides hearsay, there is another issue with regard to claimant Francisco

6    Ramos and that is whether his attendance at the library meeting constituted

7    participation in "protected activity." This court found it did not because he did not

8    attend as a "potential witness or claimant:"

9         He last worked at Evans Fruit approximately 20 years
          ago and while employed there he did not witness any
10        alleged sexual harassment.  He did no more than
          accompany his wife, Angela Mendoza, to the meeting.
11        Mr. Ramos' attendance at the meeting did not constitute
          "participation" in protected activity.  He does not fall
12        within the "zone of interests" protected by Title VII or
          the WLAD.  His situation is clearly factually
13        distinguishable from that involved in *Thompson v. N.
          America Stainless, LP*, _____ U.S. _____, 131 S.Ct. 863
14        (2011) (after plaintiff's fiancee filed a sex discrimination
          charge against the defendant, their joint employer,
15        plaintiff was fired). Mr. Ramos' interests are "unrelated
          to the statutory prohibitions" of Title VII and the
16        WLAD. *Id*. at 870,

17    (ECF No. 256 at pp. 7-8).

18        Plaintiffs assert the court erred in finding Ramos did not fall within the

19    "zone of interests" protected by Title VII or the WLAD.  Ramos clearly, however,

20    is not in the same situation as the plaintiff's fiancee in the *Thompson* case.  That

21    plaintiff was employed by the same company as his future wife when he was fired

22    because she filed a sex discrimination charge.  Ramos had not been employed at

23    Evans Fruit in 20 years and he did not witness any sexual harassment while

24    employed there.  During his deposition, he testified the "only" reason he went to

25    the library meeting was to "accompany" his wife, Angela Mendoza,  (ECF No.

26    212-6, Ramos Dep. at p. 15, lines 20-22), that he was not going to provide any

27    information about sexual harassment, and that he was merely there to be supportive

28    **ORDER RE MOTION FOR
     RECONSIDERATION, *INTER ALIA*- 10**

of his wife. (*Id.* at p. 16, lines 2-7). Furthermore, contrary to Plaintiffs' assertion, Ramos' deposition testimony is equivocal as to his presence at the meeting being specifically requested by the EEOC. (*Id.* at p. 15, lines 12-19). In their motion for reconsideration, Plaintiffs assert that "Ramos actually provided assistance to his wife by facilitating communications between his wife and the EEOC investigator," but Plaintiffs do not cite any of the record in support thereof, and there is no support for the same in the deposition of Ramos. The court did not "clearly err"in finding that Ramos' attendance at the meeting did not constitute "protected activity." Even if it did, however, as noted above, his contention that he was subjected to a materially adverse action depends on inadmissible hearsay testimony because Ramos repeats the alleged threat he was informed of by Aguila and/or his (Ramos') counsel.

Because the out-of-court statements made by Aguila to his counsel and to others, repeating Sanchez's statement, constitute inadmissible hearsay, the court will not reconsider awarding judgment for Defendants on the retaliation claims of Francisco Ramos, Angela Mendoza, Ambrocio Marin, Gerardo Silva, Aurelia Garcia, Cirilo Marin, Elodia Sanchez, Norma Valdez and Wendy Granados. As to these claimants, the presence of Cuenca and Rojas could  only be  "adverse" if there is admissible evidence to establish the meeting participants' awareness of the alleged threat made by Sanchez. There is no such evidence. Those claimants cannot repeat what they were told by Aguila, their counsel, or by someone else regarding the alleged threat. Accordingly, as to them, what remains is the mere presence of Cuenca and Rojas in a public library. Furthermore, four of the claimants were unaware of the presence of Cuenca and Rojas (Ramos, Garcia, Cirilo Marin and Angela Mendoza);  the majority of them did not know who Cuenca and Rojas were (the exceptions being Aguila, Ambrocio Marin and

///

**ORDER RE MOTION FOR RECONSIDERATION, *INTER ALIA*- 11**

1    Gerardo Silva); and only one of them (Aguila) alleges he saw Cuenca and Rojas

2    taking pictures with a  cell phone.[5]

3

4    **IV. GREGORIO AGUILA**

5         There are three issues with regard to Aguila: 1) did he engage in protected

6    activity by attending the library meeting?  2) did Alberto Sanchez make a threat

7    against him as opposed to threatening the other library meeting attendees? and 3)

8    if Aguila was engaged in protected activity and there was a threat against him, is

9    there admissible evidence to link that threat to Juan Marin and/or to Evans Fruit?

10

11        **A.  Protected Activity**

12        In its summary judgment order, the court noted as follows:

13             The allegations made by Mr. Aguila regarding pre-
              library meeting  interactions with Juan Marin are not
14            remotely related to any "protected activity" on the part
              of Mr. Aguila concerning an EEOC investigation into
15            charges of sexual harassment.  Indeed, there is no
              evidence that prior to the library meeting, Mr. Aguila
16            was aware of any allegation by his partner, Elodia
              Sanchez, that she had been sexually harassed by Juan
17

18        [5] *Robinson v. Shell Oil Company*, 519 U.S. 337, 117 S.Ct. 843 (1997), and

19    *Estrada v. Security Barricade, Inc.*, 2006 WL 753241 (W.D. Wash. 2006),

20    cited by Plaintiffs, did not involve the evidentiary issues presented here.

21    Plaintiffs seemingly recognize this, prefacing their discussion of those cases

22    with the assertion that "**[b]eyond the hearsay issues raised by Defendants**,

23    Evans Fruit tries to interpose a requirement that retaliation claimants directly

24    observe or personally experience the retaliatory acts complained of to maintain

25    an actionable claim."  (ECF No. 290 at p. 7).  (Emphasis added).  In *Robinson*

26    and *Estrada*, there apparently was no evidentiary obstacle, as here, to causally

27    linking the adverse action to protected activity.

28    **ORDER RE MOTION FOR**
      **RECONSIDERATION,** *INTER ALIA*- **12**

1    Marin.  The evidence indicates he was not aware of these
2    allegations until long after the library meeting when he
     and Ms. Sanchez moved to California.

3    (ECF No. 256 at pp. 16-17).

4         Although the court did not specifically find that Aguila's attendance at the

5    library meeting did not constitute "protected activity" (that he did not attend the

6    meeting to talk about Juan Marin's alleged sexual harassment), Plaintiffs address

7    it in their motion for reconsideration.

8         In his declaration filed in advance of the September 2010 preliminary

9    injunction hearing in CV-10-3033-LRS (ECF No. 9-4 in CV-10-3033-LRS filed

10   June 17, 2010), Aguila recounted his problems with Marin, including that when he

11   first started working for Evans Fruit in 2008, Marin gave him paychecks not

12   bearing his name (Aguila's name); that Marin had him cash other Evans Fruit

13   checks made out to other names and return the money to Marin; that in early 2009,

14   Marin offered him $20,000 to kill four people; that in March 2009, May 2009 and

15   November 2009, Marin offered to buy his (Aguila's) son; and how in June 2009,

16   Marin approached him and offered him $500 to have sex with his (Aguila's)

17   partner, Elodia Sanchez.  In his declaration, Aguila says he learned about the

18   February 2010 library meeting from Ambrocio Marin who told him he should go

19   to the meeting to discuss the problems he and Elodia Sanchez had with Juan Marin.

20   During his testimony at the preliminary injunction hearing, Aguila reiterated these

21   problems he had with Juan Marin (including the offer to buy his child and the offer

22   to pay for sex with Ms. Sanchez).  (ECF No. 170 in CV-10-3033-LRS at pp. 24-

23   25).  Plaintiffs note that during his July 2010 deposition, Aguila testified to

24   knowing that Marin harassed women, specifically that he would offer them money

25   in exchange for sexual favors.  Aguila mentioned the names of a couple of women,

26   other than Elodia Sanchez, that he heard Marin offer money to in exchange for sex.

27   (ECF No.  280-2).

28   **ORDER RE MOTION FOR**
     **RECONSIDERATION, *INTER ALIA*- 13**

1    Although the record indicates that Aguila was not at the February 2010

2    library meeting to complain about sexual harassment of Elodia Sanchez (because

3    he was not yet aware of her being harassed), the record does not allow the court to

4    conclude as a matter of law that Aguila's attendance at the meeting did not

5    constitute participation in any "protected activity."    Arguably, a reasonable

6    inference can be drawn from the record that Aguila was present at the meeting, if

7    not to talk about sexual harassment of Elodia Sanchez, to talk about other things

8    which he reasonably perceived to be sexual harassment of her (Marin offering him

9    money to have sex with Ms. Sanchez), even if it was not.[6]  To establish that he

10   engaged in a protected activity, a plaintiff need only show that "[he] had a

11   'reasonable belief that the employment practice he protested was prohibited under

12   Title VII." *Sias v. City Demonstration Agency*, 588 F.2d 692, 695 (9th Cir. 1978).

13

14   **B. Threat**

15   The court's summary judgment ruling on Aguila's retaliation claim was not

16   based on there not being a threat leveled against him by Alberto Sanchez.  Instead,

17   this court's ruling more or less assumed Aguila had engaged in protected activity

18   (attending the library meeting) and that he was threatened by Sanchez, but that

19   there was no admissible evidence to link that threat to Juan Marin and the library

20   meeting.  Yet, in its reconsideration response, Defendant Evans Fruit suggest that

21   while the comments relayed by Sanchez may have constituted a threat against the

22   nine other meeting attendees, they did not constitute a threat against Aguila

23   himself.

24   _____

25   [6] In the summary judgment order, the court found this offer was among

26   Aguila's pre-meeting interactions with Juan Marin "which had nothing to do

27   with Title VII 'protected activity'".  (ECF No. 256 at pp. 18-19).

28   **ORDER RE MOTION FOR
     RECONSIDERATION,** *INTER ALIA*- **14**

In his declaration filed in advance of the September 2010 preliminary injunction hearing in CV-10-3033-LRS (ECF No. 9-4 in CV-10-3033-LRS, Paragraph 19), Aguila said Sanchez advised him over the phone on Feb. 11, 2010 (one day after the library meeting) as follows:

> Alberto told me that they knew I had attended the meeting in the library. He asked if I was involved in trying to cause Juan Marin problems. I told him that I did not go to the library. He said I was lying and that they had taken pictures of us in the library with a cell phone. Alberto Sanchez said they knew that Cerilo Marin (Juan Marin's brother) and Ambrosio Marin (Juan Marin's cousin) had also been at the meeting and that they had plans to take care of them. He said that they were going to get even with anyone else that attended and cooperated. He also said that they knew I was desperate for work and they were going to give me some money and work but I had to report to them what occurred in any future meetings. By "they," I understood Mr. Sanchez to be referring to him and Juan Marin. This call really upset me and I called the EEOC attorneys immediately.[7]

Evans Fruit asserts the statement from Sanchez is an "offer of work," and is "not a threat or retaliatory." According to Evans Fruit, "[t]he statement is . . . not a threat directed at Mr. Aguila" because "[a]t the time of the alleged statement, Aguila's participation and cooperation were unknown to Sanchez and Marin." According to Evans Fruit, "Sanchez did not threaten Aguila because he attended the meetings." Rather, says Evans Fruit, "[e]ncouragement, suggestion, and even persuasion is not a threat and is not retaliation."

Here again, the court cannot conclude as a matter of law that Sanchez's statement was not a threat against Aguila. Arguably, Aguila could have reasonably perceived himself to be included in the threat because at the time of the library meeting, he intended to cooperate with the EEOC, even if that was unbeknownst to Sanchez and Marin at that time. Arguably, a reasonable inference arises that

---

[7] This is the "threat" that counsel subsequently passed on to the other meeting attendees/future retaliation claimants.

**ORDER RE MOTION FOR RECONSIDERATION, *INTER ALIA*- 15**

1   Aguila was among those who would be "taken care" of because he intended to

2   cooperate.  That he intended to cooperate is confirmed by the fact he regularly was

3   in touch with the EEOC and his own counsel (Ms. Rodriguez) thereafter to report

4   on his various post-library contacts with Sanchez and Marin.  (ECF No. 9-4 in CV-

5   10-3033-LRS, Paragraphs 20, 23 and 30).

6

7           **C.  Hearsay**

8           Defendant Evans Fruit did not confine the hearsay issue to a single footnote

9   in its reply brief on summary judgment.  In its opening brief on summary judgment,

10  Evans Fruit asserted that "the claimants attempt to bolster their claims with

11  inadmissible hearsay statements and mere suspicion" (ECF No. 192 at p. 1), and

12  that "[a]fter the library meeting, through multiple layers of hearsay, often from

13  counsel for claimants, the word was spread that threats were being made against

14  those at the library and that they were all in danger" (ECF No. 192 at p. 7).  Evans

15  Fruit contended that this hearsay evidence was inadmissible and that it was

16  "singularly inappropriate of claimants' counsel to represent to claimants that they

17  had been threatened in order to encourage them to file retaliation charges."  (ECF

18  No. 192 at p. 7).

19          Moreover, the hearsay issue was a prominent component of the motion of

20  Defendants-Intervenors for summary judgment (ECF No. 217) on the claims of

21  Plaintiffs-Intervenors.  EEOC was not entitled to disregard the hearsay issue even

22  though its suit was against Evans Fruit only.  Hearsay was an issue regardless of

23  whether the Plaintiffs-Intervenors were suing Juan Marin in their individual

24  capacities, or suing Evans Fruit as EEOC class members based on alleged threats

25  made by Marin.  The importance of resolving these evidentiary issues prior to the

26  commencement of any trial was obvious at the time the court considered the

27  summary judgment motions and remains so now.

28  **ORDER RE MOTION FOR**
    **RECONSIDERATION, *INTER ALIA*- 16**

On summary judgment, Plaintiffs-Intervenors (not the EEOC) attempted to justify admission of Sanchez's statements on the basis that they were not hearsay under Fed. R. Evid. 801(d)(2)(D) because it was the admission of a party-opponent in that Sanchez was an agent of Juan Marin.  For the first time in the joint motion for reconsideration, Plaintiffs contend Sanchez's statement to Aguila was not hearsay because it was a "verbal act" or because it was the statement of a co-conspirator pursuant to Fed. R. Evid. 801(d)(2)(E).  For the first time, Plaintiffs contend Sanchez's statement is admissible pursuant to Fed. R. Evid. 803(3), statement of declarant's then existing state of mind.

Normally, a motion for reconsideration is not intended to provide a party with another chance to make arguments it could have and should have advanced the first go around.  That said, the court will consider the evidentiary arguments which Plaintiffs advance for the first time on reconsideration.

**1.  Verbal Acts (Non-hearsay)- Fed. R. Evid. 801(c)**

"Hearsay" means a statement that the declarant does not make while testifying at the current trial or hearing; and a party offers to prove the truth of the matter asserted in the statement.  Fed. R. Evid. 801(c).  Statements that are "in issue" or that have independent legal significance, are not hearsay.  5B Wash. Prac., Evidence Law and Practice §801.10 (5th ed.).  The "general notion is that evidence of a statement that must be proved to establish a claim or defense is not hearsay because its relevance does not depend upon its truth."  *Id*.  "The statement is relevant simply because it was made."  *Id*.  "Evidence of the alleged statement is evidence of a verbal act, an utterance that is itself an operative fact giving rise to legal consequences.  The statement is admitted to show that it actually occurred, not for the truth of the statement's contents."  *Adair v. Safeco Insurance Company*, 2010 WL 2079542 (D. Mont. 2010) at *4, citing *U.S. v. Pang*, 362 F.3d 1187, 1192

**ORDER RE MOTION FOR RECONSIDERATION,** *INTER ALIA*- **17**

1    (9th Cir. 2004), and *Stuart v. UNUM Life Ins. Co. of Am.*, 217 F.3d 1145, 1154 (9th

2    Cir. 2000).

3         Plaintiffs contend Sanchez's alleged statement to Aguila is offered to prove

4    that Aguila was retaliated against by Juan Marin because of his engagement in

5    protected activity (his participation in the library meeting), and that Sanchez's

6    statement shows the causal link between engagement in that protected activity and

7    the presence of Cuenca and Rojas in the Sunnyside Library (the adverse action).

8    Plaintiffs contend the statement is offered for the mere fact it was made, not for its

9    truth.

10        With regard to Juan Marin, the statement is clearly offered for the truth of

11   the matter asserted:  that "they" includes Juan Marin and the alleged threat was

12   made at his direction.  The statement is not offered simply to show it actually

13   occurred.  Plaintiffs are not just trying to establish a threat was made, but that it

14   was made at the direction of Juan Marin.  Plaintiffs acknowledge what they seek

15   to prove through Sanchez's statement is Marin's involvement, not simply that

16   Sanchez made a threat.  In other words, the alleged threat does not have

17   "independent legal significance." It does not have significance apart from the truth

18   of its content.  Vis-a-vis Marin, it is not true the sole significance of the  alleged

19   statement is that it was made.  This is because the Plaintiffs must also somehow

20   link  Sanchez's statement to Marin.  Plaintiffs essentially acknowledged this in

21   their response to Evans Fruit's motion for summary judgment, asserting there was

22   "direct evidence that the adverse employment action was due to the protected

23   activity as the threats were directed at getting even with anyone who went to the

24   meeting or talked with the attorneys" and therefore, "the **content** of the threats

25   themselves state a causal link between the protected activity (attending the

26   meeting; talking to the attorneys) and the adverse employment action (getting even

27   ///

28   **ORDER RE MOTION FOR**
     **RECONSIDERATION, *INTER ALIA*- 18**

1   if you went to the meeting or talk to the attorneys)."  (ECF No. 214 at p. 15)

2   (Emphasis added).

3       On the other hand, it appears that what Sanchez said to Aguila is a non-

4   hearsay verbal act to the extent it is considered solely for the purpose of evaluating

5   Evans Fruit's liability to Aguila for what Sanchez said to Aguila.  In other words,

6   Sanchez's statement cannot be offered against Marin because in that context, it is

7   offered for the truth of the matter asserted (that Marin was part of the "they"

8   threatening the meeting participants).  Vis-a-vis Sanchez, it can be offered against

9   Evans Fruit on the basis that the mere fact it was uttered by him is of legal

10  significance without regard to its truth.  It has "independent legal significance"

11  with regard to Sanchez, but not with regard to Marin.[8]

12      **2.  Admissions of Party Opponent (Non-hearsay)- Fed. R. Evid.**

13          **801(d)(2)**

14      In its summary judgment order, the court restricted its analysis to whether

15  Sanchez's statement (alleged threat) could be attributed to Juan Marin so as to

16  constitute an admission of a party opponent which is admissible non-hearsay.  The

17

18  [8] The same analysis applies to the alleged statement Sanchez made to Aguila

19  during a March 8, 2010 telephone conversation: "Alberto told me in an angry

20  voice that I should not testify or say anything because I knew what type of

21  people I was dealing with."  (ECF No. 9-4 in CV-10-3033-LRS, Paragraph 23).

22  This statement is inadmissible hearsay with regard to Marin because it is

23  offered for the truth of the matter asserted because Plaintiffs seeks to link

24  Marin to the statement: that Marin is one of "the people" Aguila is dealing

25  with.  It appears, however, that the statement  qualifies as a non-hearsay verbal

26  act to the extent Plaintiffs seek to use it to establish Evans Fruit's liability to

27  Aguila via Sanchez only.

28  **ORDER RE MOTION FOR**
    **RECONSIDERATION, *INTER ALIA*- 19**

1   court concluded Sanchez's statement was not admissible, reasoning as follows:

2           Even assuming this to be a threat that could conceivably
3           be linked to Juan Marin, and that it was indeed made by
            Mr. Sanchez, it is inadmissible hearsay and cannot be
4           considered in determining whether a reasonable person
            would have considered the presence of Cuenca and
5           Rojas in the library to be materially adverse. Fed. R.
            Evid. 801(d)(2) provides that a statement is not hearsay
6           if it is offered against an opposing party and "(C) was
            made by a person whom the party authorized to make a
7           statement on the subject; (D) was made by the party's
            agent or employee on a matter within the scope of that
8           relationship and while it existed; or (E) was made by the
            party's coconspirator during and in furtherance of the
9           conspiracy." Such a statement must be considered "but
            does not by itself establish the declarant's authority
10          under (C), the existence of the relationship under (D); or
            the existence of the conspiracy or participation in it
11          under (E)." The statement allegedly made by Mr.
            Sanchez over the phone does not establish that he was
12          authorized by Juan Marin to make such a statement, and
            does not establish that it was made by Mr. Sanchez as an
13          agent of Juan Marin within the scope of any agency
            relationship which existed at that time between them.
14          Accordingly, the statement is not admissible against
            either Juan Marin or Evans Fruit as opposing parties.
15          The mere fact that Mr. Sanchez was a crew leader for
            Evans Fruit and Juan Marin was his foreman at the time
16          the statement was allegedly made (a fact Mr. Sanchez
            testified to in conjunction with the preliminary
17          injunction hearing in CV-10-3033-LRS, ECF No. 172 at
            p. 466), does not establish it was made pursuant to an
            agency relationship that existed between them.[9]
18
    (ECF No. 256 at pp. 15-16).
19
             In their motion for reconsideration, Plaintiffs do not attempt to persuade the
20
    court that Sanchez's statement is a non-hearsay admission by a party opponent
21
    pursuant to 801(d)(2)(C)(made by a person whom the party authorized to make a
22
    statement on the subject) or (D)( made by the party's agent or employee on a matter
23

24          _____

            [9] "The employee's station within the organization is not relevant to the Rule
25   801(d)(2) analysis," instead "[t]he relevant inquiry is whether the employee's
26   statement was made within the scope of employment." *McDonough v. City of*
27   *Quincy*, 452 F.3d 8, 21 (1st Cir. 2006).

28   **ORDER RE MOTION FOR**
     **RECONSIDERATION, *INTER ALIA*- 20**

within the scope of that relationship and while it existed).[10]   Instead, they now contend it is a non-hearsay admission of a party opponent pursuant to 801(d)(2)(E) (made by the party's coconspirator during and in furtherance of the conspiracy). In other words, Plaintiffs assert Sanchez was Marin's coconspirator and therefore, Sanchez's statement is admissible against Marin.

Coconspirator admissions may arise in civil cases. *Smith v. Bray*, 681 F.3d 888, 904-06 (7th Cir. 2012); *Filco v. Amana Refrigeration, Inc.*, 709 F.2d 1257, 1267 (9th Cir. 1983).  It appears it is not necessary that a civil conspiracy be pled. In the criminal context, there is case law holding it is not necessary that a conspiracy be charged in the indictment or pleadings. *United States v. Maldonado-Rivera*, 922 F.2d 934, 962 (2nd Cir. 1990).  As noted, Fed. R. Evid. 801(d)(2) provides that the statement must be considered "but does not by itself establish . . .the existence of the conspiracy or participation in it."  Independent evidence is necessary to establish the existence of a conspiracy, its pendency, whether the party against whom it was offered was a member (here, Juan Marin), and whether the statement was made in furtherance of it.  "This requirement can be satisfied by the testimony of non-conspirators or by corroboration of facts contained in the statements of the conspirators." *United States v. Petty*, 132 F.3d 373, 380 (7th Cir. 1997).  The issues of the existence of a conspiracy, its pendency, whether the party against whom it was offered was a member, and whether the statement was made in furtherance of it, are for the court under Fed. R. Evid. 104(a).  *Bourjaily v. United States*, 483 U.S. 171, 175-76, 107 S.Ct. 2775 (1987).  Preponderance of the
///

---

[10] Sanchez's statement is not admissible against Evans Fruit as the admission of a party opponent because it was not made within the scope of his agency/employment relationship with Evans Fruit.

**ORDER RE MOTION FOR RECONSIDERATION, *INTER ALIA*- 21**

evidence is the standard of proof applied to these preliminary fact issues.  *Id*. at 175.

In its summary judgment order, the court noted that Aguila indicated Juan Marin had made certain statements to him following the alleged threat he received from Alberto Sanchez on February 11, 2010.  The court concluded these statements by Marin were of no significance (even though admissible as admissions of a party opponent pursuant to Fed. R. Evid. 801(d)(2)(A)- made by an opposing party "in an individual or representative capacity").  The court reasoned as follows:

> Mr. Aguila says that after the library meeting and his encounters with the unidentified woman in the red truck, Juan Marin "sent for me at the ranch and told me I was his friend, that I should never betray him, that I should never do anything against him, that I should never knife him in the back.  And laughing, he held himself and said you know what I'm capable of; I can kill you."  Because the statements made by Mr. Sanchez are inadmissible, this alleged statement by Marin, which is admissible as a statement by an opposing party, stands in isolation and is not causally linked to Mr. Aguila's participation in the library meeting.  The same goes for the alleged telephone call Mr. Aguila received from Marin after Mr. Aguila had moved to California.  In that call, Marin purportedly told Mr. Aguila that "I know that you're in San Diego, California, take care of yourself.  Hopefully God will help you."  It is just as likely that alleged overt and subtle threats made by Marin directly to Mr. Aguila were linked to Marin's alleged interactions with Mr. Aguila well before the library meeting and which, as noted above, had nothing to do with Title VII "protected activity."

(ECF No. 256 at p. 18).

In its summary judgment order, the court did not discuss another post-meeting statement allegedly made by Juan Marin to Aguila on or about February 12, 2010, two days after the February 10 library meeting, and one day after the alleged threat conveyed to Aguila by Alberto Sanchez.  According to Aguila in his declaration filed in advance of the preliminary injunction hearing in CV-10-3033-LRS (ECF No. 9-4 in CV-10-3033-LRS, Paragraph 20) :

**ORDER RE MOTION FOR RECONSIDERATION, *INTER ALIA*- 22**

1

2

3

> Juan Marin called me on or about February 12, 2010 and asked me if I had talked to Alberto Sanchez. He also offered me work at the apartments and money if I told him what was happening at the meetings. I also told the EEOC about this call.

4    Plaintiffs do not contend this statement by Marin constitutes a threat in itself,

5  but contend that coming a day after Sanchez's call to Aguila, constitutes

6  confirmation that Marin was part of the "they" Sanchez referred to as knowing that

7  pictures had been taken and threatening to get even with those who attended the

8  meeting and cooperated with the EEOC. In other words, Plaintiffs contend it

9  constitutes independent evidence which establishes the existence of a conspiracy,

10  that Marin was part of it, and that Sanchez's statement was made in furtherance of

11  it.

12    Marin's February 12, 2010 statement is insufficient to establish by a

13  preponderance of evidence that he was engaged in a conspiracy to retaliate against

14  those who attended the library meeting and cooperated with EEOC. While Marin's

15  statement seemingly corroborates Sanchez's earlier statement about providing

16  Aguila money and work for reporting on what was happening at the meetings, it

17  does not corroborate that Marin agreed Sanchez should threaten meeting

18  participants and that he was part of a conspiracy with Sanchez to retaliate against

19  those participants. Plaintiffs acknowledge that Marin's statement by itself does not

20  constitute a threat against anyone, but an offer of work in exchange for

21  information.

22    With regard to Marin's later alleged statements to Aguila ("told me . . .I

23  should never betray him . . .you know what I'm capable of; I can kill you" and "I

24  know that you're in San Diego, California, take care of yourself. Hopefully God

25  will help you"), while these constitute explicit or implicit threats, there is nothing

26  to causally link them to Aguila's participation in the library meeting unless Mr.

27  Sanchez's earlier statements (February 11 and March 8, 2010) are admitted into

28

**ORDER RE MOTION FOR**
**RECONSIDERATION, *INTER ALIA*- 23**

evidence as co-conspirator admissions.  This is so, even assuming that Aguila's participation in that meeting amounted to engagement in Title VII "protected activity."  As the court stated in its summary judgment order, "[b]ecause the statements made by Mr. Sanchez are inadmissible, [these] alleged statement[s] by Marin, which [are] admissible as . . . statement[s] by an opposing party, stand[] in isolation and [are] not causally linked to Mr. Aguila's participation in the library meeting."

In *Smith v. Bray*, 681 F.3d 888 (7th Cir. 2012), a discharged African-American employee brought an action against his former supervisor (Bianchetta) and the manager of his employer's human resources department (Bray), alleging under 42 U.S.C. Section 1981 that he was subjected to racial discrimination and retaliation.  The plaintiff argued that Bray and Bianchetta conspired to retaliate against him after he complained about discrimination.  When Bianchetta learned the plaintiff had retained a lawyer, he told the plaintiff that getting a lawyer was "the worst f***ing thing you can do," that he would "let Denise [Bray] know that you have a lawyer," and that "we're going to deal with you from here on, from this point on. You're going to be sorry.  You're going to regret this."  Later, on another occasion, the plaintiff called Bianchetta to explain his absence from work and that he was going to pursue a medical leave.  Bianchetta responded that "ain't nothing wrong with you and you're faking it, and Denise [Bray] and I already know, you won't be coming back."  During his absence from work, the plaintiff also called Bray, who told him that "if Jim [Bianchetta] is not going to talk to you[,] I'm not going to talk to you."

The question facing the Seventh Circuit was whether the plaintiff identified any admissible evidence substantiating the existence of a conspiracy outside of Bianchetta's "we're-gonna-get-you" hearsay statement itself.  The circuit observed that plaintiff's best evidence on this point was what Bray had told him after he

**ORDER RE MOTION FOR**
**RECONSIDERATION, *INTER ALIA*- 24**

1  repeatedly called and paged her during his leave to talk about his health insurance:

2  "Well, I'm not going to discuss this, and I told you before that if Jim [Bianchetta]

3  is not going to talk to you[,] I'm not going to talk to you." While this testimony

4  was admissible against Bray as a statement by a party opponent, Fed. R. Evid.

5  801(d)(2)(A), the Seventh Circuit concluded it was insufficient to show that Bray

6  conspired with Bianchetta to retaliate against plaintiff for his complaints of

7  discrimination. In other words, it was insufficient to deem Bianchetta's statement

8  as non-hearsay, admissible as a co-conspirator admission pursuant to Fed. R. Evid.

9  801(d)(2)(E). According to the Seventh Circuit:

> Bray's refusal to talk with [plaintiff] falls short of proving that she was aware of any unlawful motive of Bianchetta's. It may show some concert of action between Bianchetta and Bray, but it does not indicate that they shared a common unlawful motive.

13  681 F.3d at 905.

14  Juan Marin's February 12, 2010 statement to Aguila "falls short" of proving

15  that he (Marin) was aware of "any unlawful motive" of Sanchez's related to the

16  library meeting as may have been conveyed in Sanchez's February 11 statement to

17  Aguila. Marin's statement "may show some concert of action" between he and

18  Sanchez- offering Aguila work and money for information about such meetings-

19  but it does not indicate they "shared a common unlawful motive"- threatening to

20  get even with meeting participants who cooperated with the EEOC.

**3. State of Mind (Hearsay Exception)- Fed. R. Evid. 803(3))**

23  While Sanchez's statement may show his state of mind, it does not indicate

24  that Marin shared that state of mind (that he too intended to get even with meeting

25  participants). Plaintiffs simply presume Sanchez's statement reveals Marin's state

26  of mind: "Sanchez's . . . threats are also admissible to show his intent to assist

27  Juan Marin and at least Sanchez's, if not their collective motive, to monitor and

**ORDER RE MOTION FOR RECONSIDERATION, *INTER ALIA*- 25**

1  chill protected activity. Sanchez's statement that he and Juan Marin were aware
2  of the meeting and had photographs of those in attendance does go to show
3  Sanchez's knowledge that the claimants were engaging in protected activity . . . ."
4  Rule 803(3) applies only to a statement describing a state of mind of the declarant
5  and "does not authorize receipt of a statement by one person as proof of another's
6  state of mind." *Hong v. Children's Memorial Hospital*, 993 F.2d 1257, 1265 (7th
7  Cir. 1993).

8       While Fed. R. Evid. 803(3) is of no assistance to Plaintiffs in establishing a
9  retaliation claim against Marin due to the fact Sanchez's statement is not reflective
10 of Marin's state of mind, the statement is reflective of Sanchez's state of mind and
11 can be offered against Evans Fruit for the truth of the matter asserted- that pictures
12 had been taken of the participants at the library meeting and that Sanchez
13 threatened to get even with those participants. The court agrees with Plaintiffs that
14 "Sanchez's . . . threats are . . . admissible to show . . . **at least Sanchez's** . . . motive
15 to monitor and chill protected activity." (Emphasis added). Evans Fruit contends
16 Sanchez's statements do not reflect his state of mind, but are offered to prove the
17 truth of the matter asserted. This does not make any difference. The 803(3)
18 exception recognizes the statements are being offered for the truth of the matter
19 asserted (in other words, they are hearsay), but makes them admissible anyway
20 because of what are considered circumstantial guarantees of trustworthiness.

21
22 **V. CONCLUSION**

23      The court will not reconsider awarding summary judgment to Evans Fruit
24 and the Marins on the retaliation claims of the claimants other than Gregorio
25 Aguila. To establish the causal link between their participation in the library
26 meeting (the protected activity) and the adverse action (presence of Cuenca and
27 Rojas in the library), they rely on what Aguila or counsel or someone else told

28
**ORDER RE MOTION FOR**
**RECONSIDERATION,** *INTER ALIA*- **26**

them about Alberto Sanchez making a threat against them. In other words, Aguila or counsel or someone else repeated Sanchez's alleged threat to these claimants. This is inadmissible second level hearsay for which no exemption or exception applies.

The court will not reconsider awarding summary judgment to the Marins on the retaliation claim of Gregorio Aguila. Alberto Sanchez's alleged threats conveyed to Aguila are: 1) not verbal acts vis-a-vis Marin because they are offered for the truth of the matter asserted (that Marin was part of the "they", "the people," making the threat); 2) not admissions by a party opponent (not admissions by an agent of Marin or admissions by a co-conspirator); and 3) not reflective of Marin's state of mind. Summary judgment for the Marins on the WLAD claims of all claimants is reaffirmed and Plaintiffs-Intervenors have already conceded that Title VII claims cannot be maintained against the Marins.

Summary judgment for Evans Fruit on the Title VII and WLAD retaliation claims of all claimants is reaffirmed, with the exception of Gregorio Aguila's Title VII and WLAD claims against Evans Fruit. The court reconsiders awarding summary judgment to Evans Fruit on the claims of Gregorio Aguila to the extent they are based on what Alberto Sanchez allegedly said to Aguila following the library meeting. Evans Fruit's liability, if any, depends on whether Sanchez's conduct- not Juan Marin's conduct- can properly be imputed to Evans Fruit. Sanchez was a crew leader for Evans Fruit at the time he allegedly made the statements to Aguila. In the sexual harassment case, CV-10-3033-LRS, a jury found that Evans Fruit crew leaders were not supervisors for whose conduct Evans Fruit could be found vicariously liable under Title VII. (ECF No. 982).[11] If this

---

[11] Even if Sanchez was a supervisor, there would be no vicarious liability under the WLAD. (ECF No. 741 in CV-10-3033-LRS at p. 3).

**ORDER RE MOTION FOR**
**RECONSIDERATION, *INTER ALIA*- 27**

1    finding has preclusive effect in this retaliation case and Sanchez was a mere co-

2    worker, it may be necessary for Aguila to prove that Evans Fruit supervisors or

3    members of management had actual or constructive knowledge of his alleged

4    retaliatory behavior and condoned, tolerated, or encouraged the same. *Hawkins v.*

5    *Anheuser-Busch*, 517 F.3d 321, 347 (6th Cir. 2008).

6        Evans Fruit's summary judgment motion sought a determination as a matter

7    of law that it cannot be held liable for punitive damages.[12]  The court withholds

8    such a determination pending Aguila's presentation of evidence at trial and

9    whether Evans Fruit is found liable for any retaliation by Sanchez.  The court

10   anticipates an initial liability phase of the jury trial to be followed, if necessary, by

11   a damages phase before the same jury.

12       Plaintiffs' Joint Motion For Reconsideration Of Order Re Summary

13   Judgment Motions (ECF No. 279) is **GRANTED in part and DENIED in part**

14   as set forth herein.  The Judgment filed April 19, 2013 (ECF No. 257) is

15   **VACATED**.  Evans Fruit's "Petition For An Award Of Its Reasonable Attorney's

16   Fees And Costs Pursuant To 42 U.S.C. §2000e-5(k) and Rule 54(d)" (ECF No.

17   262) is **DISMISSED** as moot.

18

19   **VI.  RULE 54(b) CERTIFICATION**

20       Pursuant to Fed. R. Civ. P. 54(b), the court may direct entry of a final

21   judgment as to one or more, but fewer than all, claims or parties if the court

22   expressly determines there is no just reason for delay.  The court hereby **DIRECTS**

23   the District Executive to enter a final judgment in favor of Defendant Evans Fruit

24   and Defendants-Intervenors Marins on the claims of Aurelia Garcia, Wendy

25

26       [12] Aguila is precluded from recovering compensatory damages.  (ECF No.

27   176).

28   **ORDER RE MOTION FOR**
     **RECONSIDERATION, *INTER ALIA*- 28**

Granados, Ambrocio Marin, Cirilo Marin, Angela Mendoza, Francisco Ramos, Elodia Sanchez, Gerardo Silva and Norma Valdez, and in favor of Defendants-Intervenors Marins on the claims of Gregorio Aguila.

There is no just reason for delay in entering this judgment as it will allow for an immediate appeal of the summary judgment rulings in favor of Defendant and Defendants-Intervenors on the aforementioned claims which comprise the overwhelming majority of the claims (and claimants) in this case. These claims are severable from Aguila's claims against Evans Fruit based on alleged imputable conduct by Sanchez, and sufficiently factually and legally distinct from Aguila's claims against Evans Fruit. It appears that immediate review of these claims will not result in subsequent duplicative proceedings on appeal. Immediate review of these claims is likely to result in resolution of issues affecting how any eventual trial is conducted (i.e., admissibility of certain evidence and whether a claimant is allowed to recover compensatory damages should liability remain a possibility[13]). Immediate review to determine if this court has correctly narrowed the number of triable claims is clearly more efficient than proceeding with a jury trial solely on Aguila's claims against Evans Fruit when the possibility remains that an additional trial will have to be conducted should the Ninth Circuit Court of Appeals eventually find this court improperly awarded summary judgment on other claims.

Pending the Ninth Circuit's concurrence that Rule 54(b) certification is appropriate and if so, the outcome of an appeal, trial of Aguila's claims against Defendant Evans Fruit is hereby **STAYED**.

///

---

[13] It appears the issue of recovery of compensatory damages will also be presented as an issue on appeal in the sexual harassment case, CV-10-3033-LRS.

**ORDER RE MOTION FOR RECONSIDERATION, *INTER ALIA*- 29**

1    **IT IS SO ORDERED**.  The District Executive is directed to enter Judgment

2    as set forth above, and forward copies of the same and this order to counsel of

3    record.

4    **DATED** this ___21st___ day of August, 2013.

5

6                              *s/Lonny R. Suko*

7                    _____
                              LONNY R. SUKO
8                         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
**ORDER RE MOTION FOR
RECONSIDERATION, *INTER ALIA*- 30**